**In re Ronald Lee BINNING, Patricia Jane Binning, Debtors.**

**LEBANON PRODUCTION CREDIT ASSOCIATION, Plaintiff,**

v.

**Ronald Lee BINNING, Patricia Jane Binning, Defendants.**

Adv. No. 1–82–0217.
Bankruptcy No. 1–82–00895.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Oct. 22, 1982.

Mark Florence, Lebanon, Ohio, for plaintiff.

John C. Bauer, Cincinnati, Ohio, for defendants.

## DECISION

Burton Perlman, Judge.

Debtors in the associated Chapter 11 bankruptcy case are farmers and are defendants herein. Plaintiff is a secured creditor here seeking relief from the § 362 stay so that it may proceed with foreclosure actions on its collateral, real and personal. The complaint as originally filed included a request for an appointment of examiner. Such request for examiner was disposed of by order entered August 10, 1982.

The matter came on for hearing. Defendants farm a total of 1,093 acres. They sharecrop approximately 890 acres and rent the balance. Their actual ownership of real estate extends only to approximately 8 acres. They grow wheat on about 200 acres, while the rest is in soybeans. Defendants have a grain drying facility on the acreage which they own and which services the produce of all of the acreage that they farm. The evidence at the trial dealt primarily with amount of debt owing and valuation of collateral.

Thus in its case, plaintiff offered evidence to show that it was the holder of three notes executed by defendants in the respective amounts of $65,373.43; $362,-945.74; and $22,638.08. These notes do not have a term, but are payable on demand. Demand has been made and the principal amount due is $429,167.25 plus $95,578.35 in interest on the date of trial. Plaintiff is secured by "all farm and machinery and equipment, including but not limited to all tractors and tilling and harvesting equipment." The same security instrument (PX 4) filed September 21, 1978, also recites "All corn and soybean crop". In addition, plaintiff is mortgagee of a real estate mortgage stated not to secure indebtedness in excess of $375,000.00 on the 7.4555 acres owned by debtors. Plaintiff offered the testimony of an expert valuing the equipment of debtors at $158,450.00 (PX 14). Plaintiff also offered evidence of a second expert valuing defendants' real estate at $152,000.00, and

their equipment at $145,350.00 (PX 15). This appraisal included in the real estate valuation a value of $64,000.00 for the grain drying facility.

The evidence presented by defendants as to valuation consisted of the testimony of defendant Ronald Binning. He valued the equipment at about $200,000.00. He testified that a lienor prior to plaintiff had an interest in the amount of $38,000.00 in that collateral.

To sum up, plaintiff's case was that the value of its collateral was established by its evidence to total $320,000.00. Defendants assert that the proper valuation is considerably higher, $450,000.00. Plaintiff and defendants do not have a substantial disparity as to the value of the equipment and the real estate apart from the grain drying facility. We have concluded that the valuation of the grain drying facility of defendants should be accepted over that according to plaintiff. The reason for this is that plaintiff's expert admitted that his valuation was low because the facility was located on only a small acreage of owned property. In view of the evidence that defendants did farm a substantial area consisting of in excess of 1,000 acres, all of which was accessible to the grain drying facility, we conclude that the low valuation by plaintiff's expert is inappropriate.

In urging that it is entitled to the relief which it seeks, plaintiff argues that this should be accorded it under § 362(d)(1) because it is not receiving adequate protection of its interest in the property in question. In the alternative, plaintiff argues that it is entitled to relief pursuant to § 362(b)(2), because defendants do not have any equity in plaintiff's collateral. We can dismiss the latter point without extended discussion, because clearly the collateral of plaintiff, farm equipment and real estate mortgage, is necessary to an effective reorganization of these debtors. Farmers cannot operate without their equipment and farm. This leaves then the issue of adequate protection for resolution.

Of great importance in the application of § 362 to a determination of whether the parties seeking relief from the stay is entitled to such relief, is § 362(g). The statute there provides:

"(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues."

Thus, debtors, the parties opposing relief, have the burden of proof on the issue of adequate protection. Defendants presented no evidence at the hearing on the issue of adequate protection. Because we are a court of equity, we have examined the case file to see whether it provides a basis upon which a finding of adequate protection might be rested. The case file contains the plan proposed by debtors though not confirmed. We deem it appropriate to consider that plan in reaching a determination of the question of adequate protection. *In re Pannell,* 12 B.R. 51, 4 C.B.C.2d 866 (Bkrtcy., E.D., Penn., 1981). The plan proposed by debtors is that this plaintiff will be paid one-quarter of its outstanding balance including accrued interest upon the sale of the 1983 wheat crop in the spring of 1983. One-third of the remaining balance including interest will be paid upon the sale of the 1983 crop. One-half of the remaining balance including interest upon the sale of the 1984 main crop will be paid. The remaining balance with accrued interest will be paid upon the sale of the 1985 main crop.

In this case debtors have been financed by plaintiff over a period of years and in that time defendants have been successful farmers. Defendants now find themselves in difficulty because they responded to falling crop prices coupled with a rise in fuel and other costs of operation by investing the current proceeds from their sale of crops in the commodities market. The investment was disastrous. When this happened plaintiff called its notes, as it was entitled to do because they were demand notes.

The disclosure statement filed by debtors indicates on the one hand that debtors found themselves losing money and this motivated the unfortunate investment in the commodities market. On the other hand debtors project a future profitability which will be sufficient to liquidate the debt to plaintiff incurred by non-payment in the past year. No explanation appears, however, as to why such profitability is now to be expected when the recent actual history of debtors has been otherwise.

Under those circumstances we do not see how it can be said that the plan proposed by defendant debtors can afford adequate protection to plaintiff. Plaintiff is suffering an attrition of its secured position with the passage of time. The value of farm equipment is depreciating. Interest charges are being accrued, and no amortization of debt is occurring. In respect to these matters, plaintiff is entitled to adequate protection. If the plan of arrangement proposed by debtors indicated that continuing and unusual profitability could be reasonably expected, so that the successful relationship between plaintiff and debtors could be resumed, a conclusion that plaintiff was adequately protected could be justified. We do not see that in the present picture, and therefore are compelled to conclude that defendants have failed to carry the burden of showing adequate protection for plaintiff. It ought also to be noted that this is not a situation where default has resulted in acceleration of an obligation of fixed term, and debtor is seeking to deaccelerate and reinstate the original maturity date, a common Chapter 11 objective. Here debtors agreed to a demand obligation, so that the impact of a debt now irrevocably due in full cannot be avoided.

The foregoing constitutes our findings of fact and conclusions of law.

Accordingly, we hold that plaintiff is entitled to the relief it seeks, and the automatic stay will be lifted.